Tom CARDWELL, Roy Pettit and W. C. Wright, as Co-Executors and Co-Trustees under the Will of Leon Daube, Deceased, Plaintiff in Error,

v.

Olive H. DAUBE, individually and as Co-Executrix and Co-Trustee under the Will of Leon Daube, Deceased, et al., Defendants in Error.

No. 40070.

Supreme Court of Oklahoma.

Jan. 15, 1963.

As Amended Jan. 22, 1963.

Lytle, Soule & Emery, Oklahoma City, for plaintiffs in error.

Otey, Johnson & Evans, Geo. N. Otey, James W. Williams, Ezra Dyer, Ardmore, for defendants in error.

BLACKBIRD, Chief Justice.

This appeal concerns the interpretation of certain trust provisions of the will of Leon Daube, deceased, hereinafter referred to as "testator".

The provision of the testator's will concerning its various subjects are set forth in sections thereof, labeled "Items", which said items are numbered "One", "Two", "Three", etc. After directing payment of his debts, expenses of last illness and burial, and of taxes chargeable against his estate, in the Will's "Item One", the testator bequeathed to his surviving wife (who is the defendant in error, Olive H. Daube) in the Will's "Item Two", his jewelry, personal effects, and furniture; and in the Will's "Item Three" directed cancellation of all debts due him from Tom Cardwell (one of the executors named in said Will). Under the Will's "Item Four", the Testator provided that the residue of his estate be held in two trust estates, designated therein as "Trust A", and "Trust B". According to the provisions of this Item, one-half of his "adjusted gross estate", as defined by the Federal Estate Laws, was to constitute "Trust A" (in the event that a wife survived the testator) and the rest of the residue, less the bequests described in Items Two and Three, and the estate's administration costs and estate taxes, were to constitute "Trust B".

By the terms of subsequent provisions, "Trust A" was not to come into being unless the testator's wife was living at the time of his death; otherwise, the property designated for said trust would automatically become "Trust B" property.

Although directions for distribution of the income and corpus of the above-mentioned trust estates, as a whole, or generally, were not set forth in the will until they appear in subsequent provisions (Item Four, paragraph (4)(a) the Will's Item Four, paragraph (2)(a) gives the trustees power to advance to the beneficiaries thereof "(including my wife)" reasonable portions or parts of said trust estates, and, then

provides: "But no distribution from Trust A shall be made during my wife's life * * * except to her." Likewise, Item Four's paragraph (3)(c), which deals, among other things, with the conveyance, or transfer, to beneficiaries of the trust estate's property of "nominal or small market value", contains the provision that no such distribution from Trust A should be made to anyone except the wife during her life. The Will's Item Four, paragraph (4) (f) provides that upon the death of the testator's wife, or her remarriage, the net income of Trust B should be distributed by the trustees to the testator's offspring, or their successors in interest.

There has never been any question but that, under the plain provisions of the above-described will, the testator's wife, Olive, ceases to be a beneficiary of Trust B upon her remarriage. The only question that has arisen is whether or not such event would terminate her beneficial interest in Trust A. Admittedly the only reason for this question is the wording of Item Four's paragraph (4), which is the general one with reference to distribution, and, in material part, reads as follows:

"(4) The trustees shall distribute the income and principal of said trust estates as follows:

"(a) The trustees shall pay to my wife during her lifetime *as long as she remains unmarried,* all of the income of said trust estates.

"(b) *Upon the death of my wife, the trustees shall distribute to such persons or legal entities as my wife shall by Will appoint,* and in the event she shall fail to make such appointment, then to the trustees to be placed in and become a part of Trust B; provided that if such Trust B has at that time been terminated such Trust A shall vest in and be distributed to and go in equal shares (per stirpes and not per capita) to my children then living and children of any deceased child or deceased children of mine then living, * * *

"(c) The power of appointment herein given to my wife shall be exerciseable by my wife alone and *in all events*.

* * *." (Emphasis ours).

In the petition that the hereinbefore mentioned Cardwell and the two other co-executors and co-trustees appearing here as plaintiffs in error, filed in the district court, as plaintiffs, against the parties appearing in this appeal as defendants in error but hereinafter referred to as defendants, they prayed the court to construe the will under the authority, and/or jurisdiction, conferred on it by the Oklahoma Trust Act, and specifically Tit. 60 O.S.1951, secs. 175.-23 and 175.53, and alleged, inter alia, as follows:

"* * * defendants, or some of them, have advised the plaintiffs that in their opinion, from an examination of all of the provisions of said Last Will and Testament, Item Four (4)(a) requires with respect to the remarriage terms a construction that said clause applies to Trust B only and has no relationship to Trust A, and that the Co-Executors and/or Co-Trustees, under a proper construction of said Last Will and Testament are required to distribute the income of Trust A to Olive H. Daube so long as she shall live and whether or not she shall remarry; that the plaintiffs, while realizing that the obvious intent of the testator was to so limit the application of Item Four (4) (a) to Trust B, the plaintiffs are unwilling to now make and adhere to such construction of said provision unless this Court shall so order; * * *."

At the trial of the issues joined by the above described pleading, and others filed on behalf of defendants, the trial court entered its judgment in favor of the defendants, in accord with separately-written findings of fact and conclusions of law, which read, in part, as follows:

"* * * The Will specifically provided with respect to Trust A by express language incorporated therein, that so long as Olive H. Daube should live no distribution of any kind—corpus, interest, income or otherwise—should be made from Trust A except to her; that during her lifetime all of the income from Trust A should be distributed to her annually; and that she had the power of appointment, exercisable by her and her alone, and in all events to dispose of Trust A by Will; and that her rights with respect to Trust A were terminable only by her death. There was no provision in said Will that her remarriage would in any way affect her rights with respect to Trust A. It was not intended that her remarriage—in event she should remarry —would in any way affect her rights with respect to Trust A.

* * * * * *

"The Will specifically provided that in event Olive H. Daube remarried she would lose her right to the income from Trust B; but this provision was limited to Trust B. * * * Trust A and Trust B were entirely different trusts, and the rights of Olive H. Daube with respect to Trust A and her rights with respect to Trust B were governed by entirely different facts, circumstances and considerations, and subject to entirely different limitations and restrictions, all as is clearly provided in the Will. * * *"

In this appeal, plaintiffs in error, hereinafter referred to as plaintiffs, base their entire argument for reversal of the trial court's judgment on the hereinbefore quoted provisions of Item Four, paragraph (4)(a). They say that (4)(a) makes Mrs. Daube's entitlement to the income of Trust A dependent upon her not remarrying, although they recognize that there is no provision in the Will for the distribution of such income during her lifetime, to anyone else, and they also recognize the power given her under paragraph (4)(b) of the same Item, to control, by a will of her own, distribution of this same Trust (Trust A) at her death.

On the other hand, defendants' position is that the testator undoubtedly intended Mrs. Daube to have the income from both Trusts as long as she remained unmarried, and to lose only the income from Trust B, if she remarried. They point out that the only specific provision in the Will for the diversion, from her, of any income from either of the Trusts, deals with Trust B ·only. They say that when the language of Item Four, paragraph (4)(a) is considered in conjunction with the *specific* provisions of the Will hereinbefore .referred to, and it is observed that said provision is the only one in the whole Will that could even be claimed to cast any doubt on Mrs. Daube's right to the Trust A income, the will must be construed as the trial court construed it. We agree. We think that the six words " * * * as long as she remains unmarried * * *" were written into paragraph (4) (a) because that paragraph is plural, collective, and/or general, in terms, and could not have been written into such a provision, referring to both trusts, without them or, other words of similar meaning, being included. In other words, the Will could not promulgate the general direction to the trustees to pay the testator's wife the income of *both* trust estates during her lifetime, unless it did include the condition "as long as she remains unmarried", because more specific provisions, elsewhere in the ,will, plainly showed that such a general direction could clearly have application to both estates, *only* if such condition, or qualification was noted, or included therein.

 It is our opinion, from reading the testator's will as a whole, that it was not his intention to create, with Trust A, an estate, whose income would not be inaccessible to all persons (as it might be for some years, in the event of his surviving wife's remarriage) and could only accumulate income (under plaintiffs' theory) until its distribution could be made in accord with testamentary appointments the wife might make. It is also our opinion that the infer-.ence plaintiffs attempt to draw from the questioned wording in Item Four's para-graph (4)(a) would be contrary to, and would not form "a consistent whole" with, other parts, and specific provisions of, the Will (see Tit. 84 O.S. 1951 and 1961, sections 155, 156 and 159) and that the trial court's findings, conclusions and judgment are neither contrary to law, nor clearly against the weight of the evidence. Said judgment is therefore affirmed.